JUDGE WILLIAMS
deliveeed the opinion op the oouet:
Sayre, as holder, sued the drawer, acceptor, and indorser of an inland bill of exchange for two thousand five hundred dollars, payable at four months, dated at Frankfort, Kentucky, December 14, 1854, drawn by W. C. Trabue, addressed to and accepted by I. H. Trabue, Hawesville, Kentucky, payable at the “ Louisville Savings Institution, ” to S. F. J. Trabue and by him indorsed.
Judgment went by default against the acceptor and indorser; but the drawer resisted, because, as he alleges, of want of proper presentment for payment, due protest or due notice thereof to him; and also, because more than five years had elapsed “from the time the bill fell due to the time of service of process J As by section 2, artiele 3, chapter 63 (2 Stant. Rev. Stat., 127), it is the. commencement of the action which, by section 1, article 4, same chapter, 132, is deemed the date of the first summons issued in good faith which is to determine the time, and not the service of the process, said answer cannot be deemed as setting up a bar by limitation, and nothing more relative to it need be said.
By section 12, chapter 22 (1 Stant. Rev. Stat., 274), the notarial protest, under the notarial seal, of non-payment of a bill, is made evidence of its dishonor.
A regular protest, under the notarial seal, made at the proper place and time, being in evidence, the only issue of consequence is as to due notice. It is in proof that the drawer then resided and did business at Hawesville, which, doubtless, was known to the holder, or could have been with ordinary diligence.
*131 The bill was placed for collection in the Northern Bank of Kentucky at Lexington, where the holder resided, and by it. transmitted to its branch at Louisville, which caused its regular presentation and protest.
The notary, who was also an officer of the Louisville branch of the bank, says he protested it for non-payment on the day it was due, having demanded payment at the Louisville Savings Institution before two o’clock, P. M., and within its business hours; that he made out notices to the various parties, and inclosed them under one cover to the bank at Lexington, so as to go out by the next mail. This he states from having examined his notarial record, and from his general habits.
The cashier, clerk, and porter of the bank at Lexington prove that their business habits were, for the porter to attend the mails, bring the letters to the cashier, who would immediately hand them over to the clerk when it was necessary to give notices and when bills were for collection; to note the fact when notices of dishonor did not arrive by due course of mail; and that where the holder, as in this case, lived in the city, to notify him immediately; that whilst none of these officers have any recollection of this particular transaction, yet they have no doubt notice reached the bank by regular course of mail from Louisville, and that Sayre, the owner of the bill, was immediately notified.
Sayre’s clerk states that his habit was to send off notices to the indorser and drawer at their places of residence, if known; and if not, to send a notice both to the place where the bill is dated and where addressed, to the drawer, by first mail.
As no one has, or can state, from positive recollection, whether notice was sent to the drawer, W. C. Trabue, at Hawesville, do these facts raise a legitimate presumption *132 sufficiently strong to authorize the verdict; or, in other words, is this competent evidence?
In this case a legal written notarial protest, under seal, is the foundation; without notice, the protest would avail nothing. The knowledge of its importance, and the habit of the notary to make them out and mail them, would seem to be reasonably certain; for it could scarcely be expected that a notary public, in a commercial city, could or would charge his memory with the facts of each case, and that he actually mailed the notices. ' It is a legitimate presumption, from his habits, that he, in this case, discharged his legal duty, and we regard the evidence as competent.
The evidence of the habits of the officers of the Northern Bank at- Lexington we also regard as competent, and authorized the jury to determine that the notices were in due. time received and sent out by them.
And the facts detailed also authorized them to determine that D. A. Sayre received the notices of dishonor, and had notices sent to W. C. Trabue, at both Frankfort and Hawesville, by due course of mail. It was more than ten years after the dishonor of said bill before these witnesses gave their depositions; it could scarcely be expected that honest men would profess to recollect the minutiae of the protest and notices on a bill in which neither they nor their bank had-an interest; but they are enabled to speak with much confidence from the notarial record, from habits, and from memoranda on the books of the bank and bill itself.
These sources, it seems to us, should command quite as much confidence as the professed-recollection of such remote transactions; at least we think the current of authority, both, in England and America, authorized the admission of such proof, and the jury having found a *133 verdict for the plaintiff', it cannot be disturbed by reason thereof; and as the instructions comport with this view of the law, we see no available error to appellant’s prejudice.
Wherefore, the judgment is affirmed without damages, as no supersedeas bond seems to have been executed.